**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **Manuel Geronimo,** | * | |
| **Petitioner,** | * | |
| | * | |
| vs. | * | Civil Action No. **05-10093-RGS** |
| | * | |
| | * | |
| **United States of America,** | * | |
| **Respondent,** | * | |

## PETITIONER'S TRAVERSE IN PROPRIA PERSONA IN RESPONSE TO THE GOVERNMENT'S OBJECTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255

Now Comes Manuel Geronimo proceeding In propria persona in the above styled action and numbered cause, to be referred herein after as ("Petitioner") respectfully moving this most honorable court with his Traverse to the government's opposition for relief requested pursuant to 28 U.S.C. § 2255.[1] In support of the claim that petitioner is entitled to relief he hereby avers as follows:

## A. THE GOVERNMENT'S ARGUMENT REGARDING THE PROCEURAL BAR LACKS MERIT AS PETITIONER'S § 2255 WAS FILED WITHIN THE AEDPA'S ONE-YEAR TIME LIMITATIONS

By conducting a careful review of the record recorded by the clerk of the court for the District of Massachusetts, as conceded by the government, petitioner's 2255 pleading was filed in and to this honorable court on or before January 12, 2005. In the sense that the petitioner is incarcerated in the custody and care of the Federal Bureau of Prisons ("FBOP"), and his

---

[1] 28 U.S.C. § 2248 states: "The allegations of a return of the habeas corpus or answer to an Order to "Show Cause" in a Habeas Corpus proceeding if not traversed shall be accepted as true.

declaration in the certificate of service, mailed to the respondent affirms and attests that he placed the pleading into the prison mail system on or before January 11, 2005, coupled with the fact that the clerk of the court's docket entry reflects that it was filed on January 13, 2005 should be enough to rebut any time bar claim asserted by the government.[2]

Based upon the facts as reflected above, the government's argument is meritless. There is a special Rule for pro se prisoner litigants who file legal papers by mail. The Supreme Court held that a pro se prisoner's pleading is deemed filed on the day it is delivered for mailing to prison authorities, rather than applying the usual rule that it is filed the day it arrives in the court. The Court reasoned in Houston v. Lack, that the litigant loses control over the legal pleading as soon as he turns it over to prison personnel. The mail being sent from the FBOP Facility located at the Federal Medical Center ("F.M.C.") Devens, in Ayer, Massachusetts generally takes two days to reach the United States District Court in Boston, Massachusetts. It is conclusive that the postmark on the envelope read on or before January 12, 2005. For this reason the government's argument in this regards should be dismissed, and the pleading should therefore be heard on the merits. The Government alleged in its response to petitioner §2255 that trial counsel represented Petitioner on direct appeal, which is untrue. On April 25,2005 Petitioner sent a letter via certified mail and returned receive to trial counsel Randolph Gioia asking an affidavit clarifying the fact that he did not participated on Petitioner's direct appeal. On May 31, 2005 Petitioner received a letter in which trial counsel stated that he did not prosecuted Petitioner's direct appeal. **See exhibit A Petitioner's letter and trial counsel response**. On April 25, 2005 Petitioner send a letter to appellate counsel Janet H. Pumphrey asking her for an affidavit asserting the fact that Petitioner personally told her not to let trial counsel have any involvement in the direct appeal and on April 27, 2005 appellate counsel sent and affidavit stating in part: "Mr. Geronimo

---

[2] See Houston v. Lack, 487 U.S. 266, 273-76, 108 S. Ct. 2379 (1988).

expressly instructed me at the time when I began representing him that he did not want Attorney

Randolph Gioia, who had represented him at trial, to have any further involvement in his case."

**See exhibit B Petitioner's letter and appellate counsel response.**

Petitioner argues that the Government allegations that Petitioner should not argue the insufficiency of the evidence issue because it was raise on direct appeal, but the Government is without merits after reading the Supreme Court unanimous decision in Massaro v. United States, 538 US 500, 155 L Ed 2d 714,123 S Ct1690 (2003) where it stated that only issues that were not raised on the direct appeal cannot be raise on a §2255 motion. See also Davis v. United States, 417 U.S. 333 (1974) stating that an issue raised in a §2255 motion should be decided on the merits if the issue was raised at the trial level and on direct appeal, citing Kaufman v. United States, 394 U.S. 217, 230 (1969). The Court held that a legal issue raised earlier on direct appeal and decided against the Defendant, was properly reconsidered in a §2255 petition.

### B. THE QUESTION AS TO WHETHER THE GOVERNMENT HAD JURISDICTION TO PROSECUTE THE ACTION AGAINST PETITIONER BASED UPON THE FAILURE OF THE ASSISTANT U.S. ATTORNEY TO MEET THE OATH OF OFFICE RESPONSIBILITY IS COMPELLING

The petitioner asserts that evidence is still being sought to further support this claim, in that he has active Freedom of Information Act ("FOIA") Requests in this regards pending. The petitioner reserves the right to re-litigate this issue under the provisions of newly discovered evidence, that would be discovered through the exercise of due diligence, or any other applicable constitutional application or statute, upon such time that the full FOIA information request is received and completely evaluated for additional support of this jurisdictional claim. The

## C. THE REMAINING EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION WHEN TAKEN IN CONTEXT WITH THE GOVERNMENT'S FAILURE TO MEET THE REQUIRED ELEMENT OF KNOWLEDGE

The government failed to prove that the Petitioner had any knowledge whatsoever that he was involved in an importation scheme. The appeals Court decision in United States v. Geronimo, 330 F.3d 72-73 (1st Cir. 2003) the panel stated:

**Accordingly, to convict a principal actor of importing a controlled substance, the prosecution must prove that the accused knew the drugs were imported. See: United States v. Bolinger, 796 F.2d 1394,1405, as modified at 837 F.2d 436 (11th Cir.1986), cert. denied, 486 U.S.1009, 108 S. Ct. 1737, 100 L.Ed.2d 200 (1998)…"**

The Court in its opinion quoted United States v Mejia-Lozano, 829 F.2d 268 (1st Cir.1987) and demonstrated the difference between Geronimo's case and the circumstances in Mejia. The Court further went on to say:

**" … the claim that Geronimo advances here-a lack of awareness that the drugs in his possession originated outside the United States…" "… Geronimo stands in a very different position than Mejia. Because he did not bring the drugs into the United States himself, he can plausibly argue that he was unaware of their foreign origin. Having established that a principal actor must have knowledge of importation under sections 952(a) and 960(a)(1), it follows that the element of scienter similarly applies to the crime of aiding and abetting importation."**

From the jury's questions and its subsequent acquittal on the conspiracy count, it is clear that the jury had found that petitioner did not know that there was an "importation scheme" because the acquittal on the conspiracy count can reasonable be inferred that the jury had found Petitioner "did not know [the] origin" of the ecstasy. Furthermore, the due process clause of the Fourteenth Amendment requires the Government to prove all elements of the crime charged to lawfully convict a defendant. See: Francis v. Franklin, 471 U.S. 307, 313-27 (1985); Carella v. California, 491 U.S. 263, 265 (1989). Here the government failed to prove beyond a reasonable

doubt that the petitioner had conspired with principles of the substantive crime of importation, with this, the element of aiding and abetting has also not been proven with certainty under the same standard.[4] In Re Winship, 397 U.S. 358, 364 (1970)

When the court re-instructed on aiding and abetting in response to the jury's third question, the court inadequately defined the aiding and abetting element only in terms of assistance in the commission of a "crime," failing to name the crime itself as importation. It is compelling to note that the jury never fully understood, the vital element to convict for aiding and abetting an importation. The jury should have been instructed that the government must prove beyond a reasonable doubt that petitioner knew the drugs were imported. Since petitioner was acquitted on the conspiracy to import charge, it is reasonable to infer that the jury found that petitioner had no knowledge of importation. Under the same token, in count two of the indictment, concerning aiding and abetting the government has also not met the burden of proving knowledge.[5]

Under United States v. Mejia-Lozano, 829 F.2d 268 (1st Cir. 1987); United States v. Ortiz-Alarcon, 917 F.2d 651 (1st Cir.1990); United States v. Lopez-Gil, 965 F.2d 1124 (1st Cir. 1992); and United States v. Franchi-Forlando, 838 F.2d 585 (1st Cir. 1988) the precedence was established in that all of these cases refer to "Principals," none of them concern aiders and abettors. The circumstances in those cases are entirely different than the situation faced in the case at bar.

Petitioner argues the element of knowledge that drugs originated in a foreign country and were imported into the United States is an element of the crime charged and must be proven

---

[4] The importation scheme and culpability was between Gonzalez, and Nilvio, of whom were excluded as Geronimo's co-defendants upon the jury's acquittal on the conspiracy count.

[5] The Court responding to defense counsel and in the jury charge instructed that it required the same knowledge to be convicted of the conspiracy to import, as well as the aiding and abetting charge.

6

beyond a reasonable doubt. The only factual scenario, in which proof of such knowledge would be an issue, is within the context of aiding and abetting, because if the petitioner were the principal in the importation scheme, his knowledge of the origin of the drugs would be self-evident.[6]

Other circuits have also consistently held that in "order for the jury to find the defendant guilty of importation, the government must establish that the defendant knew that the drugs in question originated outside the United States." See United States v. Irorere, 228 F.3d 816, 823 (7th Cir.2000); also United States v. Londono-Villa, 930 F.2d 995 (2d Cir. 1991) (distinguishing the First Circuit cases, United States v. Mejia-Lozano and United States v. Franchi-Forlando, reversing because the government failed to show defendant knew of should have known that the United States was destination for drugs); United States v. Diaz-Carreon, 915 F.2d 951, 953 (5th Cir. 1990) (holding that "conviction for the crime of importation of [a controlled substance] requires proof that the defendant knowingly played a role in bringing (the controlled substance from a foreign country into the United States").

The facts of the instant case are analogous to the aiding and abetting context of armed robbery. Conviction for aiding and abetting armed robbery requires proof of a Petitioner's knowledge that the principal was armed. See United States v. Sanborn, 563 F.2d 488 (1st Cir. 1997). In Sanborn, the court held that the armed robbery statute, like 21 U.S.C § 952, does not, "in so many words, require the principal to be aware that he is using a dangerous weapon, his own knowledge is manifest from the fact of use, and in seeking to convict an aider and abettor of the aggravated offense we think the Government must show that the accomplice knew a dangerous weapon would be used..." Id at 491 (emphasis in original).

---

[6] On December 3, 1999 Gonzalez received a consensually recorded phone call at the Days Inn, from Garcia, who identified himself as the person who she was supposed to meet for delivery of the drugs.

7

Proof is not required for conviction of a principal in an importation charge, because the principal's own knowledge is manifest from his act of being the importer. During the trial, direct appeal in which the Circuit court erroneously used the government's use of the word "shipment" as an inference, to affirm the conviction and sentence, and even now, in its response to the §2255 the government attempts to strengthen its case by the use of the word **"shipment"**[7] as indicative of importation, but First Circuit case law reasons that **"shipment"** is not in itself indicative of importation. See United States v. Bailey, 270 F.3d 83 (1st Cir. 2001); and United States v. Menhtala, 578 F.2d 6, 9-10 (1978). (Emphasis mine)

Petitioner argues that he had no association with the principal, the principal being the party that brings or carries the controlled substance in to the United States. See United States v. Mejia-Lozano, 829 F.2d 268 (1st Cir. 1987). In this case the principal was Desenia Gonzalez, who was arrested as she landed at Logan Airport with the drugs on her person. The other alleged principal in count three, of which petitioner was not charged was Javier Placencio Vera, who was also arrested as he landed at Logan Airport with drugs on his person. Petitioner did not have an association with either of these parties who were charged as principals. For petitioner to have been convicted of importation under the theory of aiding and abetting, an association with the "principals" must have to be established, of which the record is void.[8]

Another compelling question submitted to the trial court by the jury asked: "if the defendant knew he was picking up an illegal substance, but did not know [its] origin, can the defendant still be considered part of the conspiracy?" The Court answered this question in the

---

[7] During Mr. Geronimo's trial testimony he asserted that he expected to pick up a "shipment" of vitamins, that he assumed was coming from Florida.

[8] Instructions concerning the importation, as conceded by the government, were from Nilvio to Gonzalez, instructing her to bring (import) the pills to the U.S. and deliver them to Garcia (After Gonzalez was arrested this delivery was done through a "controlled delivery." And "Gonzalez provided her hotel information to Nilvio, who instructed her to wait there (at the hotel) for someone (Garcia) to contact her and pick up the pills." [Govt.'s 2255 Resp at 2].

affirmative, but added the caveat that: "... although "[defendant] would not have to know the drugs originated in Holland, but would have to know that they originated somewhere outside of the United States."[9]

In this case the government was grasping at straws by trying to expand on the word "shipment." In United States vs. Bailey, 270 F.3d 83, 85-86 (1st Cir.2001), the word "shipment" was constantly used by the government to describe the transfer of barrels purported to contain garments from Los Angeles, California to a fictitious clothing store in Springfield, Massachusetts. No inference was made in that case that because the principals involved knew of and spoke of "a barrel **"shipment"** or receiving a **"shipment"** that it was synonymous with importing from outside this country's borders.[10] There is no mention of importation in the definition of the word shipment so the inference made by the government is meritless.

Concerning the charge of importation, the Days Inn in Saugus, Massachusetts plays an important and pivotal role in the charged importation scheme. It should be noted that Petitioner was never at the Days Inn in Saugus, nor was there an agreement for him to be there, he went to the Comfort Inn in Revere, Massachusetts as part of a request to meet someone,[11] twenty-four (24) hours after the so-called importation was completed.[12] By the time Petitioner was at the Comfort Inn, government witness and principle Gonzales was already out of the picture, so in this sense petitioner never had any direct contact with the importer. It is compelling to note that

---

[9] This is the same area of the argument when we refer to the district court's own comments that the element of knowledge is the same in the aiding and abetting as it is in the conspiracy to import. See [Tr. Day 5 vol. 3, page 191]; [Tr. Day 5, vol. 3, page 192]; and again [Tr. Day 5, vol. 3, page 192].

10 See also the definition of "shipment" on the Black's Law Dictionary, which states:

Shipment. 1. The transportation of goods; esp., the delivery of goods to a carrier and subsequent issuance of a bill of lading. 2. The goods so shipped; an order of goods.

[11] It is compelling to note that over twenty-four (24) hours had passed before the government agents met Mr. Geronimo at the Comfort Inn.

[12] Geromino was found not guilty of the conspiracy, which was complete when the plane landed with Gonzales at Logan International Airport. United States v. Lopez-Gill. 963 F. 3d 1124 (1st Cir. 1992)

9

Gonzales was replaced with a government agent, in the arrangement to meet petitioner at the Comfort Inn, the next day.[13]

The importation had long been completed, and with the government's agent in place the evidence was insufficient to sustain a conviction for the simple fact that a defendant cannot be charged with aiding and abetting, or conspiracy with a government agent. This is so because according to the jury verdict the conspiracy was complete before petitioner's involvement.[14] See Lopez-Gill, 963 F. 3d 1124 (1st Cir. 1992), "The importation ends when the plane lands." United States v. Sanchez, 917 F.2d 607, 611 (1st Cir. 1990), if no knowledge of "importation" existed under the conspiracy, of which petitioner was acquitted, then it would naturally follow that no knowledge of "importation" could exist under the charge of aiding and abetting.

Petitioner argues that Garcia was the only one that mentioned petitioner's name and Garcia was not a principal because he was not arrested trying to import the controlled substance. He was if anything the very last step in the importation, because he was according to the government's evidence, to pick up the drugs after they had reached the United States and then arranges a sale for them. There is a complete absence of evidence that the petitioner had any prior association with anyone within the importation scheme; that he had ever used ecstasy or even knew what it was, that he had any criminal record whatsoever, or that he had been engaged in any previous drug operations. The government simply made no case that petitioner consciously associated himself with the importation venture, or that he had any knowledge whatsoever that the drugs had been imported. See United States v. Francomano, 554 F.2d 483, 486-87 (1st Cir. 1977)

_____

[13] It can reasonably be asserted that Geromino's actions were consistent with a separate crime of possession, in which he was not charged.

[14] The aiding and abetting cannot stand on its own, since the conspiracy was removed by the jury's acquittal. Because who then did Geronimo aid and abet?

10

The Government's evidence was at best, "very thin," and in such a case, a defendant should receive the benefit of the doubt. United States v. Figerio-Migiano, 254 F.3d 30, 36 (1st Cir. 2001) Quoting United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995) citing United States v. Sanchez, 961 F.2d 1169,1173 (5th Cir.1992). It is essential for the purpose of this argument to mention the fact that "each count of an indictment must be treated as if it were a separate indictment, and that the validity of a count cannot depend upon the allegations contained in any other count not expressly incorporated." United States v. Hernandez, 980 F. 2d 868 (2nd Cir. 1992) and; United States v. Fulcher, 626 F. 2d 985, 988 (D.C. Cir.), cert. Denied, 449 U.S. 839, 101 S. Ct. 116, 66 L. Ed. 2d 46 (1980).

The jury's questions leave reasonable inference that the verdict may not have been one worthy of confidence, concerning proof of the vital element of "knowledge" under the charge of aiding and abetting an importation. First, the jury asked: "the Defendant must know that the conspiracy involved importation?" (Trial day 6 volume 4 page 2) The court responded that: "the answer is "clearly yes." (Trial day 6 volume 4 page 2); the jury's second question confirmed that they found that the Petitioner was not involved in importation: "If the Defendant knew he was picking up an illegal substance but did not know their [sic] origin, can the Defendant still be considered part of the conspiracy?" (Trail day 6, volume 4, page 5) The Court responded: "[t] he defendant, to be part of a conspiracy under your second question, would not have to know that the drugs originated in Holland but would have to know that they originated somewhere outside of the United States and, consistent with the purpose of the conspiracy, were being, thus, brought into the United States." (Trial day 6, volume 4, page 5)

It is suggested that the jury really found the Petitioner guilty – not of aiding and abetting importation – but of mere possession of a controlled substance or possession with intent to

11

distribute, a crime of which he was not charged. This hypothesis is further established in the court's explanation of aiding and abetting in response to the jury's third question: [15] "Aiding and abetting is not a crime in and of itself of a separate crime. Aiding and abetting is a principle under the law whereby a person who places himself in a position knowing that another is to commit **a crime,** to assist the commission of that **crime** if necessary, if called upon, is treated by the law as if he were the principal actor..." (Emphasis mine) (Trial day 6, volume 4, page 6)

The jury after its questions were answered, understood that the government must prove that in the petitioner's area of knowledge he knew that the conspiracy involved importation, but the jury failed to grasp that the government must similarly prove petitioner's knowledge that the ecstasy had been imported to convict for aiding and abetting the importation. Rather, the jury convicted for aiding and abetting a drug-related "crime" other than the actual importation, because importing, as well as conspiracy to import, required proof of knowledge of importation. It is settled law that "[m] ere possession of a controlled substance that is of foreign origin is insufficient to establish importation." United States v. Samad, 754 F.2d 1091, 1096 (4th Cir. 1984), citing United State v. Moler, 460 F.2d 1273, 1274 (9th Cir. 1972) (per curiam).

While it was never asked which issue was decided and undecided, the Court speculated that the jury had found Geronimo not guilty of conspiracy to import because he "wasn't in on the original agreement," but hung on the importation charge. (Trial day 6, volume 4, page 4). However, the court pointed out the illogic in such a split verdict: "[T] he question they asked about does he have to know the purpose of the conspiracy to import, maybe they find him not guilty as to that. And I don't see how they could be deadlocked on the importation charge." (Trial day 6, volume 4, page 4). Even the U.S. Attorney conceded that: "There is some link there." (Trial day 6, volume 4, page 4).

---

[15] While the verdict slip says importation it does not have a line for aiding and abetting.

12

The insufficiency of the evidence is also reflective in that the trial court erred in admitting the hearsay statements of the codefendants where the evidence was lacking even under the preponderance of the evidence standard concerning conspiracy to import, when we refer to at Lopez-Gil. [16] Also United States v. Petrozziello, 548 F.2d 20 (1st Cir. 1977), set the standard for admissibility of hearsay statements of alleged co-conspirators: a hearsay statement is admissible if it is "more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay was made, and the statement was in furtherance of the conspiracy." Id. at 23. The proponent of the hearsay statement bears the burden of establishing by a preponderance of the evidence "that a conspiracy embracing both the declarant and the defendant existed, and that the declarant uttered the statement during and in furtherance of the conspiracy." The Petitioner objected to this instruction, (Trial day 5 volume 3 page 102) so the standard of review is whether the admission of the hearsay was clearly erroneous. United States v. Spelveda, 15 F.3d 1161, 1180 (1st Cir. 1993).

There was no involvement of petitioner to import, as reflected in the jury's acquittal on the conspiracy to import charge. In the case at bar, it was the trial court's own finding that the petitioner was a member of a conspiracy to import ecstasy from Amsterdam (Trial day 5 volume 3 pages 101-102). See United States v. Rengifo, 789 F.2d. 975, 984 (1st Cir.1986). "The preponderance of evidence required for the introduction of an out-of court statement under Rule 801 (d) (2) (E) must necessarily comprise more than the weight of the statement itself…[A] co-conspirator' statement, standing alone, is insufficient to meet the preponderance standard under Rule 801 (d) (2) (E)." See: United States v. Portela, 167 F.3d 687, 703 (1st Cir.1999). Each

---

[16]The Trial Court stated, "I have, obviously, been admitting hearsay statements pursuant to the conspiracy rule, and I propose, as Petrozziello recommends, that I make a Petrozziello finding at the close of the defendant's case." (Trial day 4 volume 3 part 2 page 51)

13

individual must think the aspects of the venture interdependent, and each defendant's state of mind, and not his mere participation in some branch of the venture, is key."

The fact that the jury found Petitioner not guilty of conspiracy to import is indicative of insufficient evidence under a "beyond a reasonable doubt" standard of proof. There was insufficient evidence that petitioner was a co-conspirator with the principle, and the witness's hearsay statements, including the taped telephone conversations,[17] during a time after Gonzales completed the importation, and any conversations between Garcia and Nilvio,[18] should have been excluded as they prejudiced the defense and the results of the proceedings would have been different. A renewal of the Rule 29 motion would have been appropriate in this area because the insufficiency of the evidence on one of the elements of the charge requires petitioner's conviction for aiding and abetting to be vacated to avoid a complete miscarriage of justice.

## D. PETITIONER'S RIGHTS WERE VIOLATED UNDER THE FOURTH, FIFTH, SIXTH AND FOURTEENTH AMENDMENT'S OF THE UNITED STATES CONSTITUTION DUE TO SUBSTANTIALY DEFICIENT PERFORMANCES OF COUNSEL.

The Petitioner argues that there was a cumulative effect of error's in which it is clear from the record that trial and appellate counsel's deficient performance and omissions denied his constitutional right to effective assistance of counsel defined under the Sixth Amendment of the United States Constitution. Petitioner to addresses the failure of counsel to provide effective assistance in the pre-trial, trial, sentencing and appellate stages in which counsel's acts or omissions violated his sixth amendment rights.

It is vital to address the government's misplaced assertion that petitioner is procedurally barred from arguing his ineffective assistance of counsel argument in his § 2255 motion because

---

[17] Discussions between Petitioner and Garcia, where Garcia wanted petitioner to meet him

[18] Where the government presented conversations between Nilvio and Garcia, which had nothing to do with petitioner's actions.

14

it was not raised on direct appeal. In fact the petitioner did make a claim of ineffective assistance of counsel during the prosecution of his direct appeal, by way of submitting it through his pro se supplemental brief.[19] The First Circuit in United States v. Bey, 188 F. 3d 1 (1st Cir. 1999), covered the issue concerning a defendant raising an ineffective assistance of counsel issue in the direct appeal, by stating: "… our cases explain that we typically will not view ineffective assistance of counsel on direct appeal when the trial court did not have the opportunity to address the issue."[20]

The Supreme Court has addressed this issue in Massaro v. United States, 538 U.S. 500, 155 L. Ed 2d 714, 123 S. Ct. 1690 (2003), where a unanimous decision of the Court held:

> (1) A convicted federal criminal defendant may properly first bring an ineffective assistance claim in a collateral proceeding under § 2255, regardless of whether the defendant could have raised the claim on direct appeal; (2) Thus a defendant's failure to raise such a claim on direct appeal does not bar the claim from being brought in a later appropriate proceeding under § 2255. Counsel is to maintain an adversarial relationship in the best interest of his client.[21] Utilizing the record for support of petitioner's claim, it is vital to incorporate comments of the government, which affirmatively describe the omissions of counsel.

Wherefore it is proper for this Court to consider petitioner's Sixth Amendment claims on the merits to avoid a complete miscarriage of justice.

### 1. COUNSEL IN THE PRE-TRIAL AND TRIAL SETTING DENIED PETITIONER THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN FAILING IN HIS RESPONSIBILITY OF ASSURING THAT SUBJECT MATTER JURISDICTION EXISTED TO SUPPORT THE PROSECUTION

---

[19] Mr. Geronimo petitioned the First Circuit for leave to file a pro se supplemental brief, which was granted.

[20] Quoting United States v. Mala, 7 F. 3d 1058, 1063 (1st Cir. 1993) (claims for ineffective assistance 'cannot make their debut on direct review of criminal convictions, but rather must originally be presented to and acted upon by the trial court.") Also; United States v. Natanel, 938 F. 2d 302, 309 (1st Cir. 1991).

[21] See United States v. Cronic, 466 U.S. 648, 80 L. Ed 2d 657, 104 S. Ct. 2039 (1984), failure to subject the prosecutions case to a meaningful adversary testing process may constitute a denial of due process and establish a per se violation of defendant's right to effective assistance of counsel.

First and foremost, Petitioner has addressed two jurisdictional concerns of which are vital in determining whether there exists viable jurisdictional errors, that counsel failed to utilized as a defense. The most compelling right guaranteed a defendant with the initiation of judicial criminal proceedings is the right to determine whether a defendant's speedy trial rights have been violated.[22] Because the record reflects that the government went beyond the thirty-day (30) statutory time limit, to have returned an indictment, it was trial counsel's responsibility to file a motion to dismiss the criminal complaint and/or indictment due to the appearance of the speedy trial act violation.[23] The only remedy for a violation of the speedy trial rights is to dismiss the untimely-filed indictment.

The second part of this jurisdictional concern revolves around the area of assuring that the prosecutorial authority is existent. In the case at bar there is a compelling question that has been viably raised, concerning the mandatory nature of the government public servants to take an Oath of Office, in order to constitutionally exercise the position to which they have been appointed. For the sake of brevity, petitioner reserves the right and will further address these issues under the failure of counsel to compel a proof of jurisdictional authority as this claim further develop through the FOIA request. Petitioner asserts that trial counsel was ineffective due to the fact that back in 2000 he told Petitioner and Petitioner's family that it was necessary to hire and independent chemist to performed an independent test on the alleged drugs in petitioner's case in order to determine if in fact it was ecstasy or not. Petitioner's family gave trial counsel the money to hire a chemist as he recommended, but when Petitioner asked counsel for the results of the drug testing he simply said that the chemist never gave him one. This also

---

[22] According to the record petitioner was arrested on December 3, 1999, and an indictment was not returned until January 12, 2000 Forty (40) days after the "arrest or summons" defined under 18 U.S.C. § 3161 (b)).

[23] Counsel failed to provide effective assistance of counsel in the failure to investigate, and move to dismiss the indictment or criminal complaint pursuant to federal rules of criminal procedure Rule 12 (b) (2)

raises the concern of a conflict of interest. Petitioner in numerous occasions asked counsel for proof of the chemist work on the alleged drugs and on May 2005 Petitioner received a letter from trial counsel Randolph Gioia dated May 31, 2005 in which he stated the fact that there is not lab testing reports concerning the drugs and sending a copy of an alleged letter addressed to a chemist by the name of Brian Pape. See exhibit A letters. Petitioner brought to the attention of trial counsel the fact that he never got the chance to see the governments lab test results presumably performed by the "DEA" the Petitioner wanted to compare the lab test reports from the Government and the one that was supposed to be done by trial counsel chemist which never took place.

### E. TRIAL COUNSEL'S DEFECIENT PERFORMANCE IS STRONGLY DEMONSTRATED BY THE GOVERNMENT'S OWN CONFLICTING ASSERTIONS IN ITS REPLY TO BOTH THE DIRECT APPEAL AND THE INSTANT 2255 PLEADING

In regards to providing substantial support for the premise that trial counsel was ineffective in the trial setting and made omission that not only severely affected the trial, but the standard of review in the Circuit court we look to the record made by the government, and specifically identify the inconsistencies of the government's comments concerning counsel's performance of lack thereof. First we look to comments made on page 17 of the Government appellate brief (summary of the argument) lines 8-9 which states: **"The defendant did not argue that he did not know the drugs had come from another country."** The government in its brief capitalized this omission of counsel. This was trial counsel's failure to argued the most basic element of the crime charge, which is the element of knowledge that the drugs were imported See Scarpa v. Dubois, 38 F.3d 1,8 (1st cir.1994) stating that:

17

"At the least, Defense counsel should understand elements of offenses with which his client is charged and should display some appreciation of the recognized defenses thereto and unless counsel brings these rudiments to the table, Defendant likely will be deprive of fair opportunity to meet the case of the prosecution and, thus, will be placed at undue risk of having no effective advocate for his cause; phrased another way if defense counsel does not grasp basics of charges and potential defenses to them, Defendant may be stripped of the very means that are essential to subject prosecution case to adversarial testing. U.S.C.A. Const. Amend.6. <u>Dubois</u> at 3 and at 10.

This was reflective of the fact that during the trial, counsel focused on whether the Petitioner had any knowledge that the suitcase contained ecstasy and whether Petitioner asked Garcia to bring the suitcase downstairs rather than focusing on his knowledge or lack thereof, that drugs had been imported. Regardless of whether Petitioner had knowledge of the suitcase containing ecstasy or whether Petitioner asked Garcia to bring the suitcase downstairs as the Government alleged during trial, it is only evidence enough to prove a possession or possession with intent to distribute, which standing alone is insufficient and Petitioner was not charge with possession or possession with intent to distribute. Petitioner contents that counsel's trial strategy resulted from the failure to conduct a "thorough investigation of law and facts." See Barrett v. United States, 965 F.2d 1184, 1186 (1st cir. 1992). See also Strickland, 466 U.S. at 690, 104 S.Ct. at 2064. Petitioner argues that counsel's tactical decision resulted from neglect or ignorance.

**" in this case, the defendant did not renew his rule 29 motion after he rested."**

The decision not to renew this motion prejudiced Petitioner because with the acquittal on the conspiracy count the jury found that the government did not meet the knowledge element beyond a reasonable doubt on the aiding and abetting, thus establishing a good

18

chance for a judgment of acquittal in the District court. Alternatively, the Circuit Court

would have reviewed under a lesser standard of review, raising the reasonable possibility

of remand, had trial counsel not failed to renew this most important Rule 29 motion. This

per se constitutes ineffective assistance of counsel. This failure is also reflected in the

government's comments:

> " this theory of the case is quite novel, as it was neither argue at trial nor presented
> to the district court in a rule 29 motion." Page 19 4th paragraph says, "the defendant
> did not renew his motion after the close of the defendant case." [Page 19 lines 5-7
> Government's Appellate Brief]
> This support concerning the omissions of counsel can also be seen throughout the

government's additional comments challenging petitioner's pleadings.

> "... these claims are forfeited, and the defendant's appeal cannot survive the
> resulting standard of review." [Page 18 Government's Appellate Brief]

> Cf. "as noted this is an entirely new theory of the case. It was not presented to the
> jury, no argued at the time of the defendant's motion for directed verdict and, most
> telling, not argue at the close of the defendant's case when the defendant failed to
> renew his rule 29 motion." [Page 24 lines 1-5 Government's Appellate Brief]
> And lines 12-16 of the same page says, "if there is any doubt about the application of
> this court's importation cases to aiding and abetting cases, the defendant still cannot
> succeed, for his present claim about the law's requirements and the evidence was
> never presented in the district court."

> "... the defendant claims that the District court committed plain error by failing,
> sua sponte, to describe the principal offense several times throughout its response to
> a jury question about aiding and abetting. This claim fails because it is forfeited."
> [Page 28-29 Government's Appellate Brief]

This failure on trial counsel behalf is also shown on page 31, which says: "**that failure is**

**a forfeiture that resulted in only plain error review.**" Because of trial counsel's omission in

these regards petitioner was subjected to the higher standard of review, which he did not survive.

The only reasonable reason as to why this claim is deemed by the government to have been

forfeited is because trial counsel was ineffective.

**"His entire argument, rather, focuses on the court's response to the jury question. Any other argument is, at this point waived."** [Page 32 footnote 16 of Government's Appellee brief]

**"the defendant claims that the district court erred in admitting coconspirator statements pursuant to FRE 801 (d)(2)(E). The argument is forfeited."** [Page 35 Government's Appellee brief]

**" During the four days of testimony in the case, the defendant did not object to the admission of the coconspirator statement of Gonzalez, Garcia, or Nilvio on the basis of FRE 801 (d)(2)(E)."** [Page 35 Government's Appellate brief]

As the trial court stated: "Attorneys, as I have explained, have a duty to their clients." See (Trial day 5 volume 3 page 173) It is very clear defense attorney failed to object to any of the hearsay statements of Gonzalez, Garcia, or Nilvio and failed to aggressively cross-examine Gonzalez which could have revealed that Petitioner was not a party connected to Nilvio as the Government alleged through Garcia, also failing to establish inconsistencies in government witness testimony.

**"Notably, the defendant's failure to isolate the statements alleged to be erroneously admitted is itself a waiver."** [Page 37 Government's Appellate Brief]

**"the defendant did not raise this claim in the District Court, resulting in plain error review."** [Pages 40 and 41 Government Appellate brief]

**"the defendant's assertion that the exhibits were withheld is undermined not only by defense counsel's failure to make this claim in the District Court."** [Page 44 lines 13-15 Government Appellate Brief]

Here, as reflected above it is evident even by the Government admission that trial counsel ineffective performance violated Petitioner's constitutionally protected right to counsel:

**"defense counsel did not ask that the jurors be polled individually. Rule 31(d) requires a court upon request, after a verdict is returned but before the jury is discharged, to poll the jurors individually and provides that '[i] f the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury.'"** [Page 46 lines 9-16 Government Appellate Brief]
**"counsel's failure to request a poll."**

This ineffective assistance of counsel prejudice the Petitioner because by polling the jury individually pursuant to rule 31(d) it could have shown a lack of unanimity due to various reasons one is that the jury was deadlock and ask three very important question two of them regarding the Petitioner's knowledge of the drugs been imported and the origin of the drugs, in which after their questions were answered they acquitted Petitioner on the conspiracy to import count because the jury found beyond a reasonable doubt that the petitioner did not have any knowledge of the importation. The third question was regarding the accuracy and clarity of the verdict slip which deeply confused the jury which in turn cause doubt on the unanimity of the jury's guilty verdict on the importation count due to this confusion. This polling would have shown that the jury was so confused due to the fact that the Government alleged in the Indictment that there was a conspiracy to import and an importation but all the evidence introduced by the government was for possession or possession with intent to distribute because as the trial court stated: **Mr. Gioia**: "also, your Honor, I would ask, as I stated earlier, on the instruction on the actual knowledge, that they must prove actual knowledge. I cite the United States v. Gabrielle, [ph] that the knowledge element is not merely met."—**The Court: "I will explain, knowledge, as define in conspiracy, is the same in count two."** See (Trial day 5 volume 3 page 191). **"I will explain, "Knowledge, as define in conspiracy, is the same in count two."** See (Trial day 5 volume 3 page 192) and **"knowledge, as I (the court) have used the term in count two of the indictment, means exactly what it does in count one. So same definitions apply across the counts."** See (Trial day 5 volume 3 page 192). So if the jury found no knowledge as reflected by the acquittal in count one, for the same reason there was no knowledge in count two of the indictment because it was the same knowledge. Petitioner suffered prejudice as consequence of counsel's blunders and this entails showing of reasonable

probability that, but for counsel's unprofessional errors, result of proceeding would have been different. See Scarpa v. Dubois, 38 F. 3d 1,8 (1st cir. 1994)

Petitioner asserts that a serious risk of injustice infected the trial itself, moreover, trial counsel's deficient performance is shown in the fact that he failed to object to the constructive amendments to the Indictment. Throughout the trial the Government constructively amended the indictment by alleging evidence of possession and possession with intent to distribute. Counsel was ineffective because he failed to object or challenge the constructive amendments of the Indictment.

The Government: "That reflects the sophistication of everybody involved, the knowledge of everybody involved, that they're involved in a **drug deal**, a **drug pickup**. Many knew it was ecstasy when he went in that door. See (Trial day 5 volume3 page 123)

The Government: "It indicates he is there to do a **drug deal**." See (Trial day 5 volume 3 page 131)

The Government "No one would be going through all these mastication's, being so reluctant to come from Lawrence to **make the deal happen**." "I (AUSA) think the evidence shows very strongly the Defendant knew very well that he was up to. **He was up to a drug deal, involving ecstasy**." "I (AUSA) want to say three things very quickly about **the—one of the key issues in this case, and that is the 'hospedarse//llevar'**." See (Trial day 5 volume 3 page 133)

The Government Mr. LaPlante: "Because there's no denying anything else in this case, is there? I mean, **there was ecstasy, right? And you possessed it. It's right on the videotape**? **It's right in your hands**. The jury just watched it, right **because if you didn't know it was ecstasy, then you're not guilty, right? But if you knew it was illegal drugs, then you're guilty, right?**" Petitioner response "**I'm guilty, of possessing--- if it's drugs**." This answer by Petitioner to the Government questions on cross-examination clearly indicates that even Petitioner is alerting both the prosecution and trial counsel to the fact that he is being prosecuted for a charge of possession or possession with intent to distribute, a charge that was not on the Indictment. This is a total breakdown in the adversarial system because counsel failed to object to this type of evidence or allegations by the prosecution.

The Court: "with respect to the jury instructions, do we have any serious disagreements?" Gioia: "My first one, your honor, is that **the two elements that the Defendant knew the drugs were ecstasy or some other prohibited controlled substance**." See (Trial day 5 volume 3 page 102)

22

addressing the fact that this was the third attempt made by petitioner in requesting his sentencing

transcripts. See **exhibit C pages 1-3** which includes copies of the three letters sent and copies of

the certify and returned receipt signed by the clerk of the court acknowledging receipt, this

documents was vital in order to argue the two points enhancements and to show ineffective

assistance of trial counsel regarding the sentencing phase.

### APPELLATE COUNSEL'S DEFICIENT PERFORMANCE IS REFLECTED IN HER DIRECT APPELLATE BRIEF AND IN THE FIRST CIRTCUIT COURT DECISION IN GERONIMO V. US WHICH IS CITED AS FOLLOW

On page 16 of appellate brief it says, **"while the Government did prove participation in the criminal venture of possession of ecstasy"**

Appellate attorney was ineffective because she bypasses a dead bang winner, and

damages petitioner's appeal by inappropriately alleging that the Government proved a crime of

which the indictment did not charge, at the same time diverting attention to irrelevant matters.

**"the jury really found the Defendant guilty-no of aiding and abetting importation-but of mere possession of a controlled substance or possession with intent to distribute."** [Page 29 Appellate brief]

**" as presented here, the evidence amply proved that a conspiracy was formed among Garcia, Ortiz, Nilvio, and Gonzales."** [Page 30 Appellate brief]

**"while there is clearly evidence of the existence of a conspiracy to import, at issue**

**here is the trial court's finding that the Defendant was a member of the conspiracy to**

**import ecstasy from Amsterdam."** [Page 37 Appellate brief] Petitioner argues that appellate

counsel was ineffective because the jury determined beyond a reasonable doubt that there was

not a conspiracy in the case at bar. And by bringing back the issue of the conspiracy it

undermined the issue of the inadmissibility of the hearsay statements pursuant to FRE 801

(d)(2)(E). See United States v Geronimo, 330 f.3d at 76.

24

Petitioner asserts that he exercised his constitutional right to be tried by a jury, in this case the fact finder, who found beyond a reasonable doubt there was no conspiracy to import ecstasy in to the United States. With no conspiracy the hearsay statements were inadmissible.[25] Keeping in mind the trial judge clearly stated that he was admitting the hearsay statements pursuant to the conspiracy rule.[26] During these statements by the Court there was no mention of hearsay statement for the importation rule but only pursuant to the conspiracy rule. See: (Trial day 4 volume 3 part 2 page 51). There was also a failure of counsel to take advantage of the fact that the government conceded in its closing argument that the petitioner was not "Willingly."[trial day 6 Government closing arguments]

On page 39 it says, " **and the co-conspirators' hearsay statements, including the many telephone conversations, have been excluded.**"

Appellate Counsel failed to provide effective assistance in the failure to isolate the statements that were inadmissible pursuant to FRE 801 (d)(2)(E). Here the appellate Counsel was ineffective in the fact that she failed to isolate the statements that were inadmissible pursuant to FRE 801 (d)(2)(E). See: United States v. Geronimo, 330 F.3d at 76. Appellate counsel was also ineffective because she failed to challenge the two points enhancement Petitioner received at sentencing three months after his conviction with out a jury determination of the facts, to the extent that appellate counsel did not even had a copy of Petitioner's sentencing transcripts. On January 2005 Petitioner sent a letter to appellate counsel requesting a complete copy of his

---

[25] The trial court stated: Mr. Gioia: "also, your Honor, I would ask, as I stated earlier, on the instruction on the actual knowledge, that they must prove actual knowledge. I cite the United States v. Gabrielle, [ph] that the knowledge element is not merely met."—The Court: "I will explain, knowledge, as define in conspiracy, is the same in count two." See (Trial day 5 volume 3 page 191). "I will explain, "Knowledge, as define in conspiracy, is the same in count two." See (Trial day 5 volume 3 page 192) and "knowledge, as I (the court) have used the term in count two of the indictment, means exactly what it does in count one. So same definitions apply across the counts." See (Trial day 5 volume 3 page 192).

[26] The Court Stated, "I have, obviously, bee admitting hearsay statements pursuant to the conspiracy rule, and I propose, as Petrozziello recommends, that I make a Petrozziello finding at the close of the defendant's case." (Trial day 4 volume 3 part 2 page 51)

sentencing transcripts and on January 25, 2005 Petitioner received a letter from appellate counsel stating in part: "I don't have the sentencing transcripts" **See exhibit D**

Appellate counsel was additionally ineffective in that she failed to follow Petitioner's concerns regarding the government's use of the word **"Shipment"** as an indication of importation. The word "shipment" was erroneously used by the appeal's court as an inference to deny Petitioner's direct appeal claiming that "shipment" is synonymous with importation, which is the means of establishing prejudice in this regards. The Government on its response to Petitioner Motion to vacate, set aside or correct sentence Pursuant to Tile 28 U.S.C § 2255 is bringing back the word **"shipment"** as indicative that petitioner had knowledge the drugs had imported.

This is borne out in the language as expressed in the First Circuit case of United States vs. Bailey, 270 F.3d 83, 85-86 (1st Cir.2001), in which the Word "shipment" was constantly used to describe the transfer of barrels purported to be containing garments from Los Angeles, California to a fictitious clothing store in Springfield, Massachusetts. No inference was made in that case that because the principals involved knew of and spoke of a barrel **"shipment"** or receiving a **"shipment"** that it was synonymous with importing from outside this country's borders. The Petitioner personally provided a copy of the First Circuit case United States v. Bailey, 270 F.3d 83, 85-86 (1st Cir.2001), to appellate counsel.

## CONCLUSION

There was a cumulative effect of errors that have been argued herein, coupled with the fact that the government now contradictingly alleges in its rebuttal to the instant § 2255 pleading, that counsel provided petitioner with "outstanding" representation, though in its Appellate brief

26

it argued that petitioner was procedurally barred, or had defaulted or waived certain viable issues, for failing to object or reasonably preserve them in the district court. Based upon the compelling and substantial showing of the denial of several constitutionally protected rights, it is prayed that this most honorable court move to vacate the conviction and sentence, and remand this action for further proceedings to further develop the record concerning the extent of the Sixth Amendment Violations. At an evidentiary hearing the Court will be better able to determine the relief warranted, by either dismissing the indictment on the insufficiency of the evidence, issue an Order for a New Trial, or re-sentence petitioner consistent with the reasoning delineated by the Supreme Court in Booker to avoid a complete miscarriage of justice.

Date: 6-10-05

Respectfully Submitted,

Manuel Geronimo, Pro se.
Register. No. 22893-038
FMC Devens P.O. Box 879
Ayer, MA 01432

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery to Lisa M. Asiaf, Assistant United States Attorney, 1 Courthouse way Boston, MA 02210.

This 10th day of June 2005.

Manuel A. Geronimo, pro-se

27

Manuel A. Geronimo
Reg. No. 22893-038
FMC Devens, P.O. Box 879
Ayer, MA 01432

ED
OFFICE.

P 12 01

April 25, 2005

Randolph Gioia
Attorney at Law
24 school St, 8th floor
Boston, MA 02108

Re: U.S. v. Geronimo. No. 00-10013(RGS)

Dear Mr. Gioia:

I hope this letter finds you well. I am writing to you this letter concerning the fact that I would like it to be clarified by way of an affidavit, that you did not participated in the prosecution of my direct appeal, and that I did not want you to have any involvement in this regards. If you could please provide me with an affidavit affirming same at your earliest convenience it would be greatly appreciated.

Thank you, for you time and assistace in this regards.

Sincerely,

Manuel A. Geronimo

Cc:    MG/me
Nestor A. Geronimo
Juan A. Geronimo



**Exhibit A**

LAW OFFICE OF
# RANDY GIOIA

24 SCHOOL STREET, 8TH FLOOR
BOSTON, MASSACHUSETTS 02108

RANDY GIOIA
randygioia@aol.com

TELEPHONE: (617) 367-2480
FAX: (617) 723-5601

J.P. LATTIMORE
jplattimore@aol.com

May 31, 2005

## ATTORNEY CLIENT PRIVILEGED COMMUNICATION

Mr. Manuel Geronimo
22893-038
FMC Devens P.O. Box 879
Ayer, MA  01432

Dear Manny,

I am writing in response to your three recent letters.

With respect to the testing of the drugs, I am sending you a copy of the letter that I sent to Brian Pape, Ph.D. Mr. Pape reviewed the documents. After the review, he told me that he could not find any errors in the government lab's analysis. I did not ask for a written report because his opinion was not helpful.

With respect to your request for an affidavit, I remember that I filed your notice of appeal and one or more requests for extension with the 1st Circuit. Initially, we explored the possibility that I would represent you on appeal. I recommended that someone other than your trial lawyer would be the best lawyer to review your entire case file. I referred you to Janet Pumphrey who eventually represented you on your direct appeal. In fact, Ms. Pumphrey and I met with you at Fort Devens. During that meeting we discussed, in general, your appeal. I spoke with Ms. Pumphrey several times and furnished her with whatever information she requested. I did not participate in the drafting of the brief or the oral argument. I hope that this clarifies your questions. If you need an affidavit relative to the above assertions, I will be happy to furnish you with one.

I have also made arrangements to copy my entire file relating to your case. My paralegal spent fifteen hours copying your file. I pay her twelve dollars per hour and would like to be reimbursed for her time in the amount of $225.00. The file is ready for pick up.

Sincerely,

Randy Gioia

Exhibit A

September 14, 2000

Brian Pape, Ph.D
Pape & Associates
20 Tiger Road
Hudson, NH 03051

RE: United States v. Geronimo
    U.S. District Court # 00-10013

Dear Dr. Pape,

As we discussed today, I am enclosing documents
from the forensic chemist at the DEA lab who
analyzed the substance my client is accused of
possessing with the intent to distribute. I am
also enclosing a check in the amount of $480.00 to
cover your fee to review the enclosed documents to
determine if the DEA analysis contains a "fatal
flaw".

Please call me when you have completed your
analysis.

Very truly yours,


Randolph Gioia

RG/hs
enc.



Manuel A. Geronim
Reg. No. 22393-038
FMC Devens, P.O. Box 879
Ayer, MA 01432

April 25, 2005

Janet H. Pumphrey
Attorney at Law
45 Walker Street
Lenox, MA 01240

Re: U.S v. Geronimo, No. 01-1668

Dear Ms. Pumphrey

I pray that this letter finds you in the very best of health , mind and spirits. I am
and remain dedicated to set the record straight in this battle for my life and vindiction of
this unjust conviction.

Currently I have been compelled to file my pro-se 28 U.SC. § 2255, of which I
have just received the Government's response. In this response the Government attempts
to discredit my claim of ineffective assistance of counsel on the part of my trial attorney
by asserting that I had him continue on as counsel of record in my direct appeal.

You and I know this to be untrue, because I expressely instructed you that I did
not wish for attrorney Randolph Gioia to have any further involvment in my case. In fact
on many occasions during the times you came to visit me in this federal prison for the
purpose of prosecuting my direct appeal and also in our telephone conversations, I told
you that I did not want Mr. Gioia having anything to do with my appeal. It was after I
read my trial transcripts, that I became aware of his immense disregard of my best

**Exhibit B**

1

interest. This is apparent in blatently deficient performance during my trial, then when I questioned him on numerous occasions about things that he failed to do during my trial he always gave me the run around and lied to me.

In this correspondance I am requesting an affidavit from you reasserting my claim and desire at the time, to remove attorney Gioia from any further involvement in my case and specially my direct appeal. If you could please sent this to me at your most earliest convenience as time is of the essence it would be greatly appreciated.

I am dilligently trying to meet my deadline to file a responsive pleading ("Traverse") to the Government regarding my § 2255.

I thank you in advance for your time and assistance in these regards.

Sincerely,

Manuel A. Geronimo

Cc:     MG/mc
        Nestor A. Geronimo
        Juan A. Geronimo

# Exhibit B

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No.

United States of America,                    )
                                              )
            V                                 )        Affidavit of Counsel
                                              )
Manuel Geronimo                               )
                                              )

I, Janet H. Pumphrey, hereby depose and state:

1.     I represented Manuel Geronimo in the appeal of his conviction to the First Circuit Court
       of Appeals.

2.     Mr. Geronimo expressly instructed me at the time when I began representing him that he
       did not want Attorney Randolph Gioia, who had represented him at trial, to have any
       further involvement in his case.

3.     Once I became involved in the case, after Mr. Geronimo's conviction, Attorney Gioia had
       nothing more to do with the case.

Signed under pains and penalties of perjury,



Janet H. Pumphrey

April 27, 205

Exhibit B

Manuel Geronimo
Reg. No. 22893-038
FMC. Devens. Box 879
Ayer. MA. 01432

January 16, 2005

Clerk of the Court
United States District Court
One Courthouse Way
Boston, MA. 02210

RE: U.S. V. Geronimo, 05 10013 (RGS)

Dear Sir or Madam:

I am sending this letter in my attempt to obtain a complete copy of my sentencing transcripts in the above styled action and numbered cause. I have already been declared indigent by the court.

I do most sincerely thank you in advance for your time and assistance in these regards.

Sincerely,



**Exhibit C**

March 1, 2005

Manuel A. Geronimo
Register # 22893-038
FMC Devens. P.O. Box 879
Ayer. MA. 01432

Clerk's Office
U.S. District Court
One Courthouse Way
Boston, MA. 02210

RE: U.S. V. Geronimo, 00-10013 (RGS) **Follow-Up** of sentencing transcripts request.

Dear Sir or Madam:

I am sending this letter as a **follow-up** of a letter I sent you on January 16, 2005,
**"Exhibit A Letter"** in which I requested a complete copy of my sentencing transcripts in
the above styled action and numbered cause. I have not heard from you regarding these
requested documents. The court has declared me indigent already.

I eagerly await your prompt response and thank you for your attention and help.

Sincerely,

Manuel A. Geronimo

Cc:MG/me

# Exhibit C

April 14, 2005

Manuel A. Geronimo
Register # 22893-038
FMC Devens P.O. Box 879
Ayer, MA. 01432.

Clerk's Office
U.S. District Court
One Courthouse Way
Boston, MA. 02210

RE: U.S. v.Geronimo. 00-10013 (RGS) **Follow-up** of sentencing transcripts request.

Dear Sir or Madam:

I am sending you this letter as a follow-up of a letter I sent to you on January 16, 2005,
and another letter I sent on March 1, 2005, **"Exhibit A Letters"** in which I requested a
complete copy of my sentencing transcripts in the above styled action and numbered
cause. As of to date I have no hear from you regarding these requested documents. This
Honorable Court has declared me indigent already.

I eagerly await your prompt response and thank you in advance for your attention and
help in this very important matter.

Sincerely,



Manuel A. Geronimo.

Cc:MG/me

**Exhibit C**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERK OF THE COURT
UNITED STATES DISTRICT
COURT
ONE COURTHOUSE WAY
BOSTON, MA 02210

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7001 2510 0004 1075 6086

PS Form 3811, August 2001   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Clerk of the Court
U.S. District Court
One Courthouse Way
Boston, MA 02210

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7004 2510 0002 2100 3146

PS Form 3811, February 2004   Domestic Return Receipt

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CLERKS OFFICE
U.S. DISTRICT COURT
COURTHOUSE WAY
BOSTON, MA. 02210

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☒ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7004 2510 0003 6622 2219

PS Form 3811, February 2004   Domestic Return Receipt

102595-02-M-1540

# JANET HETHERWICK PUMPHREY

ATTORNEY AT LAW
45 WALKER STREET
LENOX, MASSACHUSETTS 01240

———

TELEPHONE (413) 637-2777
FACSIMILE (413) 637-1640
E-MAIL JHPumphrey@aol.com

January 25, 2005

Manuel Geronimo
# 22893-038
F.M.C. Devens
P.O. Box 879
Ayer, MA 01432

Dear Manny:

I'm sorry it's taken me so long to respond to your letter of January 16th but I had to pull your file from storage.

I don't have the sentencing transcripts. According to the last page of the trial transcript, sentencing was scheduled for April 17, 2001. As you probably know, sentencing was not much of an issue in federal cases until now.

If you think you have a sentencing issue (as per Blakely, Booker, etc.), if I were you I would order the sentencing transcript from the court reporter.

Best of luck,

Very truly yours,

Janet H. Pumphrey



Exhibit D